# Exhibit A

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

| | |
|---|---|
| PAGECOM, INC, a Washington corporation,<br><br>                         Plaintiff,<br><br>v.<br><br>SPRINT SOLUTIONS, INC., a foreign corporation; and ANNETTE JACOBS, a Sprint Area President and Washington resident,<br><br>                        Defendants. | No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION, AND DAMAGES |

Plaintiff PAGECOM, INC. ("Pagecom"), pleads as follows:

### The Parties

1. Pagecom is a Washington corporation, conducting business as a licensee under the "Sprint" brand, from business locations throughout Washington, including in Pierce County, Washington.

2. Defendant SPRINT SOLUTIONS, INC., ("Sprint") is a foreign corporation, doing business in Washington and Pierce County as a provider of telecommunications goods

COMPLAINT -1

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

and services.

3. Defendant Annette Jacobs is a Washington resident and at all times relevant to the complaint was Sprint's "Area President". She has at all pertinent times been a person in act of control of Sprint's local business activities with its Washington licensees.

Jurisdiction and Venue

4. Without limitation, jurisdiction and venue are properly vested in this Court pursuant to R.C.W. 4.12.025 and R.C.W. 19.100.160.

5. Defendant will likely argue that at least some of the issues in the complaint are subject to mandatory contractual dispute resolution. However, this court should exercise jurisdiction for the following reasons as will be set forth more fully should Defendant challenge this court's jurisdiction:

a. Claims under the Franchise Investment Protection Act, Chapter 19.100 RCW contained in this Complaint are subject to this court's jurisdiction and such claims are not waivable under RCW 19.100.180(2)(g).

b. Plaintiff has no ability to initiate claims in arbitration under the terms of the existing written agreement between the parties, and therefore this court must exercise jurisdiction or else Plaintiff has no remedy for its grievances. In fact, when Plaintiff attempted to initiate formal mediation, as more fully explained below, Defendant refused to mediate, arguing that only Defendant has the right to initiate mediation under the terms of the agreement, and that Defendant can dictate that any mediation be held at a location outside of Washington. Even if this dispute was subject to mediation and arbitration, the locale for such an action must be in Washington pursuant to RCW 19.100 Et. Seq., and Defendant refuses to

COMPLAINT -2

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

engage in any forum in the State of Washington.

       c.      Plaintiff seeks immediate injunctive relief because there is no adequate remedy at law.

### Franchise Investment Protection Act

6. The Washington Legislature enacted the Franchise Investment Protection Act, Chapter 19.100 R.C.W. ("FIPA") in 1972 in order to address the "maldistribution of information and power" which favored franchisors and had led to multiple franchise sales abuses. *Nelson v. National Fund-Raising Consultants, Inc.*, 120 Wn. 2d 382, 391 (1992).

7. FIPA protects against franchise sales abuses through its registration and disclosure requirements. *Morris v. International Yogurt Company*, 107 Wn. 2d 314, 318 (1986).

8. FIPA also contains a "franchisee bill of rights" at R.C.W. 19.100.180(2). *Coast to Coast Stores v. Gruschus*, 100 Wn. 2d 147, 150 (1983).

9. FIPA is a fundamental public policy of the State of Washington. R.C.W. 19.100.220(3). As such, it contains strong anti-waiver provisions. *See*, R.C.W. 19.100.180(2)(g); R.C.W. 19.100.220(2). And willful violation of FIPA is actually a felony. R.C.W. 19.100.210(6).

10. Any violation of FIPA's franchisee bill of rights is "an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful". R.C.W. 19.100.180(2). It is also, therefore, "an unfair or deceptive act or practice under the provisions of chapter 19.86 RCW." R.C.W. 19.100.190(1).

### Background Facts and Evolution of Dispute

COMPLAINT -3

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

11. In its written agreements with Sprint, Pagecom has been described as an "Authorized Representative" of Sprint, and in that status has been selling Sprint's goods and services since 2005. Pagecom currently has (13) retail locations (known in the industry as "doors"). During the entire time that Pagecom sold Sprint products, Pagecom's principal, Jason Surprenant, with the full knowledge and consent of Sprint, was also a principal of an Oregon corporation ("The Wireless Stores, LLC") which has been selling goods and services for T-Mobile since2009. The Wireless Stores, LLC now has (39) "doors".

12. In December of 2015, after Pagecom had been selling Sprint products in Washington for (12) years, Sprint suddenly announced to its dealers that they would be required to have a minimum of (15) doors, in order to remain in their current sustainable compensation program. At the time of this announcement, Pagecom only held (11) retail doors because in the years leading up to this change, Sprint had actually been restricting the number of doors that they were permitting Pagecom to own.

13. In light of this new requirement, Pagecom requested permission to add additional doors, despite the financial impact that such an immediate capital investment would cause, because the lower compensation structure would be financially unsustainable for Pagecom.

14. Initially, Sprint refused to allow Pagecom to add doors. Ultimately, however, after a period of discussion, Sprint agreed to allow Pagecom to increase its retail locations to (15) doors, which required an investment of approximately $300,000. While the terms of this agreement (when met) allowed Pagecom to continue to function in the "Preferred" program, the only locations available and approved by Sprint were second-tier mall kiosk locations, and

COMPLAINT - 4

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

several of those locations caused Pagecom to operate those locations at a loss (despite the significant investment). These lower performing store locations would lower Pagecom's overall total company volume on a regional and national ranking.

During the process of adding the new stores and being moved to the "Certified" program for one single month alone, the cost to Pagecom was $25,000.

15. In February of 2017, however, Pagecom attended Sprint's national dealer conference in Kansas City where Sprint announced significant changes to the dealer compensation programs, namely; changing the overall compensation dramatically. Ironically, during that conference, Pagecom was advised that the (15) door requirement was no longer in effect, notwithstanding Pagecom's recent large investment and losses associated with the sub-tier doors that they were required to open. Had Sprint not instituted this now-defunct policy in the first place, Pagecom would not have invested the hefty sum, nor would they have suffered related losses.

16. In March 2017, Sprint held a national dealer conference call with dealers nationwide to release the details of the new compensation plan that would take effect in May 2017. The newly announced compensation plan had a significant reduction in overall compensation. Sprint provided Pagecom with a compensation calculator to show the impact of the new changes. Based on the previous year's sales, Sprint estimated the negative impact to Pagecom to be almost $500,000 in the next calendar year. These changes make it virtually impossible for Pagecom to continue to exist.

17. Shortly after the national dealer call about the new compensation structure, Pagecom learned through sources that Sprint had been previously conducting calls with select

COMPLAINT -5

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

dealers (calls in which Pagecom representatives were not invited to participate) to communicate that select dealers would receive additional compensation above and beyond what would be announced on the national call, that they would not be facing the same financial impacts as would Pagecom and others. In order to receive the added compensation, these other retailers were apparently instructed to sign a nondisclosure agreement and told not to speak with other dealers regarding the additional compensation. Furthermore, Pagecom learned from a source that Sprint once again had held separate calls with select dealers where one group was not required to repay Sprint for overpayments made by Sprint to those dealers as a result of previous Sprint accounting errors, when Pagecom and others were required to pay a significant sum for these errors.

18. On April 4, 2017, Pagecom approached Annette Jacobs, the Sprint "Area President" to discuss these issues, in an attempt to appeal to Sprint's sense of fairness. Despite Ms. Jacobs demonstrating an understanding of the difficulties that these issues presented, Pagecom was advised that Sprint did not intend to accommodate their situation, and they were advised to "do whatever is best for your business" and that "consolidation is part of the industry now".

19. On June 8, 2017, through legal counsel, Pagecom wrote to Sprint to discuss the unfair acts described above, in an attempt to engage in a meaningful resolution of this dispute. Counsel for Pagecom wrote a detailed letter outlining the various legal and equitable issues at hand, in order to facilitate an appropriate discussion, in light of the parties' (13) year relationship. Sprint's initial response was dismissive.

COMPLAINT -6

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

20. From that point forward, the parties engaged in a series of communications both through telephone conferences and written correspondence. Throughout these discussions Sprint changed its position on multiple occasions, ultimately leading to Sprint's decision to essentially terminate its business relationship with Pagecom through email correspondence at 10:09 p.m. Eastern Time on Friday, March 31, 2018, on the Easter Holiday weekend, giving Pagecom a (30) day "Notice of Breach and Right to Terminate for Cause" letter, asserting that Pagecom had violated its agreement with Sprint by selling goods and services for T-Mobile. The letter gave Pagecom (30) days to "cure" the alleged breach. As will be described below, the "cure" would be factually, legally and practically impossible for Pagecom to accomplish, particularly within (30) days.

### The Parties' Agreements

21. Pagecom was incorporated in 1999 but has been an "Authorized Representative" of Sprint since 2005, and in that status has been selling Sprint's goods and services since that time.

22. The parties have done business under a series of written agreements, the most recent of which was entered into in April of 2014.

23. In its role as an Authorized Representative, and through the parties' course of conduct, Pagecom's business has become substantially associated with the "Sprint" name and marks.

24. Pagecom's sales activities are subject to strict and detailed policies, terms, conditions and controls, and its personnel are required to attend Sprint training.

COMPLAINT - 7

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

25. Pagecom is compensated by commission, but as part of its agreement with Sprint, Pagecom has incurred a variety of fees, charges and offsets and, without limitation, it has been required to purchase items at prices exceeding any bona fide wholesale price.

26. The Authorized Representative Agreement of the parties is a franchise as defined at R.C.W. 19.100.010(6).

27. Although Sprint did not register its Authorized Representative Agreement and did not provide the FIPA required disclosures to Pagecom, a business agreement is subject to the franchisee bill of rights even if the parties did not realize they had entered into a franchise at the time of contracting. *See*, *Nelson*, 120 Wn. 2d 382 (fund raising business was a franchise and R.C.W. 19.100.180(2) was violated).

### The Immediate Controversy

28. On March 31, 2018 Sprint notified Pagecom that the parties' agreement was being terminated on the grounds that Pagecom also had been selling goods and services in the state of Oregon for a Sprint competitor, to wit: T-Mobile Inc..

29. In fact, however, Pagecom does not sell goods and services for T-Mobile. Rather, Pagecom's principal, Jason Surprenant is the principal of another corporation, unrelated to Pagecom, which sells T-Mobile goods and services. Pagecom's agreement with Sprint does not prohibit Mr. Surprenant from owning an interest in a company who services another phone carrier.

30. Mr. Surprenant's other company's representation of the Sprint competitor; is in a different regional market than Pagecom's market with Sprint; and has been longstanding and well known to Sprint since 2009. Sprint had consented and/or acquiesced to Mr. Surprenant's

COMPLAINT -8

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

competing business for the entire 9 years prior to Sprint's termination of its relationship with Pagecom.

31.   Sprint's "Notice of Breach and Right to Terminate for Cause of the Authorized Representative Agreement" alleges that Pagecom has breached the exclusivity requirement by "acting as an agent for" another wireless telecommunications provider, T-Mobile. In order to cure the alleged breach, Sprint demanded that Pagecom "cease selling T-Mobile products and services", by 11:59 p.m. on May 1, 2018.

32.   Pagecom cannot cure this breach because Pagecom is not in breach. Pagecom does not act as an agent for any other carrier than Sprint. Pagecom has no legal authority to interfere with a separate corporation's agreements with T-Mobile. Furthermore, even if Mr. Surprenant's other separate business activity in another geographic region were found to be a technical breach of the agreement with Sprint, Sprint has knowingly, voluntarily, and willfully <u>waived</u> such a requirement in their agreements by not only permitting Mr. Surprenant's other business entity to continue its long time business relationship with T-Mobile after Pagecom was aware of the same (8) years ago, but also by actually encouraging Mr. Surprenant to grow his T-Mobile locations when Sprint would not approve additional Pagecom doors with Sprint. Mr. Surprenant detrimentally relied on Sprint's (9) years of knowing acquiescence and assurances in further building his other company's T-Mobile brand.

33.   Sprint only adopted its convenient legal position with respect to Pagecom's alleged violation of "exclusivity" after Pagecom complained about its unfair treatment as a franchisee. In the (8) years prior to Pagecom's letter to Sprint regarding its unfair treatment, Sprint NEVER demanded that Mr. Surprenant divest himself of his other company who sells T-

COMPLAINT -9

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington  98402
(253) 383-7123
(253) 572-1435

Mobile. In fact, Sprint let Mr. Surprenant open new Sprint door in December 2016, some (7) years after it opened its T-Mobile doors.

34. The effect of this termination notice is that if not "cured", Pagecom's (13) doors would be immediately closed, phone codes turned off, and (70) employees immediately unemployed. In addition, the effect of this termination would be that Pagecom would be exposed to liability on all of their written leases for these locations, as well as financial obligations to Sprint and their financial affiliates.

35. If unable to cure, Pagecom's only option to mitigate its damages before its codes are shut off and employees terminated would be to locate a buyer who Sprint will approve and Sell its doors. However, in order to sell its doors, Sprint must approve any such buyer to become its Sprint Authorized Representative Dealer., Such approval would come by way of an assignment agreement between Sprint and Pagecom, but only if Pagecom also releases Sprint from any and all liabilities, which would include liabilities under FIPA. This provision of any assignment makes it legally impossible for Pagecom to mitigate its damages and still maintain its significant causes of action against Sprint.

36. Since its termination notice, Pagecom has emailed/written to Sprint on multiple occasions advising Sprint that its termination of Pagecom is both unlawful and grossly unfair, and asked Sprint to rescind the same. Pagecom has requested that Sprint reconsider its position with respect to termination. Sprint has refused to do so. Pagecom has requested additional time to sell its doors so that it can minimize its losses to the benefit of both parties. Other than an additional two-week extension to obtain a "letter of intent" from a potential buyer, Sprint has refused to provide enough time for Pagecom to properly market and competitively sell its

COMPLAINT -10

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

doors. Pagecom has requested that Sprint not require a waiver of claims in order to sell its doors. Sprint has refused to do so.

37.     Pagecom cannot reasonably market or sell its doors in order to mitigate its damages because of the condensed and artificial negotiating parameters insisted upon by Sprint and further because any assignment agreement required by Sprint in a sale of Pagecom's doors will necessarily include a waiver of all claims against Sprint.

38.     On April 29, 2018, just one day away from its initial its deadline to "cure" or obtain a letter of intent to sell its doors to a willing purchaser, it was announced publicly that Sprint and T-Mobile will be merging. For such a merger announcement to be made on within (30) days of the termination notice, clearly Sprint had knowledge of such an imminent merger when it issued its termination for cause to Pagecom for what Sprint alleged to be Pagecom's selling of T-Mobile products and services.

39.     The news of the Sprint and T-Mobile merger clearly demonstrates Sprint's bad faith in terminating Pagecom because Sprint had knowledge that any alleged "lack of exclusivity" would be eliminated with the impending merger. Furthermore, the news of the merger has caused willing buyers to have apprehension about buying additional Sprint doors, not knowing how the merger will affect the value or potential closing of those locations in the future.

40.     Despite the recent development of the merger, and the uncertainty that comes with it as it pertains to the value of Pagecom's doors, Sprint refuses to delay its termination deadline or change its position.

COMPLAINT -11

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

41. Plaintiff attempted to mediate under the terms of the parties' agreement, and even initiated formal mediation through AAA, but Sprint has refused to mediate citing that Plaintiff has no right to initiate mediation. Sprint also refuses to arbitrate, stating that Plaintiff has no right to initiate arbitration under the contract.

### FIPA Violations

42. Without limitation, the forgoing conduct of Sprint constitutes violations of RCW 19.100 et. Seq. generally, including violations of RCW 19.100.180(1); (2)(b)(c)(f)(g)(i)(j) and R.C.W. 19.86.020, and reflects an unlawful termination.

43. Sprint also threatens or seeks to impose conditions violating RCW 19.100.180(2)(g), and such threats, and attempts may be enjoined pursuant to RCW 19.86.090.

### INJUNCTION

44. Plaintiff realleges all previous allegations.

45. Plaintiff is threatened with the loss of its entire business investment and years of effort, as well as its good will. Plaintiff accordingly seeks emergency relief in the form of a TRO and a preliminary injunction pursuant to RCW 19.86.090.

### OTHER CAUSES OF ACTION

46. Plaintiff realleges all previous allegations.

47. Plaintiff is entitled to declaratory relief to legally determine the respective rights of the parties under their agreement under state statutory and common law.

48. Defendant has breached its contract with Plaintiff, breached its duty of good faith and fair dealing implied in every Washington contract, and wrongfully terminated Plaintiff for cause.

COMPLAINT -12

**MARK E. BARDWIL, P.S.,**
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

49. Defendant represented to Plaintiff through its actions, representations, and conduct, that that its principal (Jason Surprenant's) other business, which sold T-Mobile goods and services, could continue to maintain and grow such a business without interference with Sprint.

50. Plaintiff reasonably relied on Sprint's actions, representations, and conduct by continuing to build its Sprint business and investing substantial resources into Sprint, to its own determinant. Sprint should be esttopped from changing its position by terminating Pagecom based on Mr. Surprenant's other business endeavors.

51. Plaintiff has been damaged in an amount to be proven at trial and is entitled to legal and equitable relief.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. That the Court enjoin Sprint from terminating its contractual relationship with Pagecom until such time as this litigation concludes and the rights and responsibilities of the parties have been established.

2. That the Court issue a declaratory judgment adjudicating the rights and responsibilities of the parties pursuant to their contract, statute, and Washington common law and equity.

3. That the Court award a judgment for damages in an amount to be proven at trial.

4. That the Court award Exemplary damages as authorized by RCW 19.100 et. Seq./ RCW 19.86.090.

COMPLAINT -13

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

3. Pre-judgment interest for all liquidated sums of damage resulting from defendants' wrongful conduct.

4. Award to Plaintiff reasonable attorney's fees and costs pursuant statute, contract or otherwise appropriate.

5. Award of any further or additional relief that the court finds appropriate or just.

Respectfully submitted this 10th day of May, 2018.

_____
MARK E. BARDWIL, WSBA #24776
Attorney for Plaintiff

*Mark Bardwil for Howard Morrill*

_____
HOWARD MORRILL, WSBA #17252
Attorney for Plaintiff

**VERIFICATION**

I, JASON SURPRENANT, Plaintiff, do hereby certify the following under penalty of perjury of the laws of the State of Washington:

I have read the foregoing complaint and I know the contents thereof and believe them to be true and correct to the best of my knowledge.

Signed this 10th day of May, 2018 at Redmond, Washington.

_____
JASON SURPRENANT

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite 102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435

COMPLAINT -14

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR PIERCE COUNTY

| | |
|---|---|
| PAGECOM, INC, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT SOLUTIONS, INC., a foreign corporation; and ANNETTE JACOBS, a Sprint Area President and Washington resident,<br><br>Defendants. | No.<br><br>DECLARATION RE: SIGNATURE ON ELECTRONIC DOCUMENT |

I, Mark E. Bardwil, declare under penalty of perjury under the laws of the State of Washington, that the foregoing electronic document, attached to this declaration, which consists of 2 pages including this declaration page, and the signature page containing the signature of JASON SUPRENANT, dated May 10, 2018, is a complete and legible image that I have examined personally and that was received by me via electronic mail at the following address: meb@markbardwil.com on May 10, 2018.

Signed at Tacoma, Washington this 10th day of May, 2018.

MARK E. BARDWIL, WSBA #24776
Attorney for Plaintiff

DECLARATION RE: SIGNATURE
On ELECTRONIC DOCUMENT -1

MARK E. BARDWIL, P.S.,
A Professional Services Corporation
Attorney at Law
615 Commerce Street, Suite #102
Tacoma, Washington 98402
(253) 383-7123
(253) 572-1435